UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CLARK CHAMBERLIN, a disabled
minor child, by and through his parents and
co-guardians TODD CHAMBERLIN and
KELLI CHAMBERLIN, *on behalf of*
*themselves and all others similarly situated,*

     Plaintiffs,

v.

BOSTON FINANCE GROUP, LLC, a
Florida limited liability company;

BOSTON ASSET MANAGEMENT,
INC., a Florida Corporation;

PROSPECT FUNDING HOLDINGS,
LLC, a Florida limited liability company;

PROSPECT FUNDING PARTNERS,
LLC, a Delaware limited liability
company;

PROSPECT FUNDING HOLDINGS
(NY) III, LLC, a New York limited
liability company;

LEO J. GOVONI, an individual;

JONATHAN GOLDEN, an individual;

AMERICAN MOMENTUM BANK, a
Texas-charted bank,

     Defendants.

Case No. 24-cv-00438

**DEFENDANT AMERICAN MOMENTUM BANK'S RULE 12(B)(6)**
**MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW**

Defendant American Momentum Bank ("AMB") respectfully moves the Court, pursuant to Rule 12(b)(6) of Federal Rules of Civil Procedure, for an order dismissing Plaintiffs' claims against AMB for failure to state a cause of action. In support of its motion and pursuant to M.D. Fla. L.R. 3.01(a), AMB submits the following legal memorandum.

## INTRODUCTION AND BACKGROUND

AMB is a bank. Plaintiffs are not customers of AMB and do not have any direct relationship with AMB. Rather, Plaintiffs allege that they are grantors and/or beneficiaries of certain "special needs trusts" ("SNTs") administered by the Center for Special Needs Trust Administration (the "Center"). Dkt. 1 at 7, 9 (¶¶ 35, 43-44). In turn, the Center "maintains … SNT bank accounts" at AMB. *Id.* at 20 (¶¶ 104-05). Thus, the Center is AMB's customer; Plaintiffs are not.

Plaintiffs allege that certain individuals and entities associated with the Center, in a series of transactions dating back to 2009 and 2012, misappropriated $100 million from SNT accounts the Center maintained at AMB.[1] *See id.* at 2, 11-20 (¶¶ 1-2, 56-103). Naturally, Plaintiffs sued those parties, asserting claims such as conversion, breach of fiduciary duty, and unjust enrichment. *See id.* at 29-56. Perhaps predictably, but nevertheless misguidedly, Plaintiffs also sued AMB, asserting claims for negligence, breach of fiduciary duty, and aiding and abetting breach of fiduciary. *Id.* at 33, 39, 45.

---

[1] Plaintiffs' allegations against AMB are dubious, but AMB does not quibble with them for purposes of this motion.  This motion takes aim at the adequacy of Plaintiffs' pleadings assuming the accuracy of the properly pleaded facts.  AMB stands ready to defend against Plaintiffs' dubious allegations.

Florida law is clear that, absent exceptional circumstances not present here, banks do not owe even a general duty of care to non-customers, let alone a fiduciary duty. Further, Florida does not impose upon banks a duty to investigate transactions made by individuals authorized to access an account. Finally, in Florida, a bank is subject to aiding and abetting liability only if it had actual knowledge of the alleged breach of fiduciary duty—allegations that a bank merely disregarded "red flags" are insufficient.

Very simply, Plaintiffs—who are ***not*** customers of AMB—have failed to plausibly allege a viable cause of action against AMB. The Eleventh Circuit and Florida district courts regularly dismiss claims against banks in similar situations, and this Court should follow suit.

## LEGAL STANDARD

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citations omitted). "A pleading that offers labels and conclusions or a

2

formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (cleaned up).

"When evaluating a motion to dismiss, the first step is to 'eliminate any allegations in the complaint that are merely legal conclusions.'" *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022) (citation omitted). "The second step is to assume the veracity of well-pleaded factual allegations and 'then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* at 934-35 (citation omitted). "[W]hen determining whether the complaint crosses 'the line between possibility and plausibility of entitlement to relief,' 'courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.'" *Doe v. Samford Univ.*, 29 F.4th 675, 686 (11th Cir. 2022) (citations omitted).

**ARGUMENT**

**I.**     **The Court should dismiss Plaintiffs' negligence claim against AMB.**

Plaintiffs assert a negligence claim against AMB. *See* Dkt. 1 at 45-47. "Under Florida law, to maintain an action for negligence, a plaintiff must establish that the defendant owed a duty, that the defendant breached that duty, and that this breach caused the plaintiff damages." *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1094 (11th Cir. 2017) (cleaned up). The Court should dismiss Plaintiffs' negligence claim against AMB because Plaintiffs do not plausibly allege that AMB owed a duty to Plaintiffs. Plaintiffs' allegation of a duty fails for at least three reasons.

**A.    AMB did not owe any duty to Plaintiffs because Plaintiffs were not customers of AMB and AMB did not have actual knowledge of the alleged misappropriation.**

Plaintiffs claim that AMB owed them "the duty to take reasonable steps to safeguard SNT funds if presented with clear evidence indicating that SNT funds were being mishandled by a fiduciary." Dkt. 1 at 45 (¶ 236). This argument fails because Plaintiffs do not allege that they were customers of AMB. *See id.* at 20 (¶¶ 104-05) (the Center was AMB's customer, not Plaintiffs).

"Florida, like other jurisdictions, recognizes that as a general matter, 'a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship.'" *Chang*, 845 F.3d at 1094 (citation omitted). Admittedly, there is an exception to the rule where "a bank may be liable to a noncustomer for its customer's misappropriation when a fiduciary relationship exists between the customer and the noncustomer, the bank knows or ought to know of the fiduciary relationship, and the bank has *actual knowledge of its customer's misappropriation*." *Id.* at 1094-95 (emphasis added). A bank only "owe[s] a duty to a noncustomer under these limited circumstances." *B-Smith Enterprises, LP v. Bank of Am., N.A.*, 2023 WL 2034419, at *3 (11ᵗʰ Cir. Feb. 16, 2023).

Plaintiffs simply cannot satisfy this test. Even assuming that Plaintiffs plausibly allege that a fiduciary relationship existed between the Center and Plaintiffs, that AMB knew about that relationship, and that the Center misappropriated Plaintiffs' funds, Plaintiffs have not plausibly alleged that AMB had *actual knowledge* of the alleged misappropriation.

Instead, Plaintiffs allege only that "numerous red flags related to the pooled SNT accounts and the BFG account at American Momentum Bank clearly evidenced that SNT account funds were being mishandled and misappropriated by the SNTs' fiduciary" and that "[g]iven the numerous red flags that SNT account funds were being misappropriated, the sole reasonable inference is that BFG's misappropriation was intended and made known to American Momentum Bank." Dkt. 1 at 45-46 (¶¶ 238-39). Critically, however, and as a matter of law, "[a]lleging that a bank disregarded 'red flags' such as 'atypical activities' on a customer's account is insufficient to establish knowledge." *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 950 (11th Cir. 2014); *see also Perlman v. Wells Fargo Bank, N.A.*, 559 Fed. Appx. 988, 994 (11th Cir. 2014) ("While these 'red flags' may have put the bank on notice that some impropriety may have been taking place, those alleged facts do not create a strong inference of actual knowledge." (cleaned up)); *Rusty115 Corp. v. Bank of Am., N.A.*, 2023 WL 6064518, at *7 (S.D. Fla. Sept. 18, 2023) ("'Red flags' in banking transactions alone do not constitute the conscious awareness of wrongdoing necessary to maintain an aiding and abetting cause of action." (cleaned up)).[2]

Because Plaintiffs only allege that AMB disregarded "red flags," Plaintiffs' have not plausibly alleged that AMB had actual knowledge of the Center's alleged misappropriation of their funds. Accordingly, AMB did not owe Plaintiffs any duty. *See Chang*, 845 F.3d at 1094-95.

---

[2] *See also Rusty115 Corp.*, 2023 WL 6064518, at *12 (confirming that this same rule applies in the negligence context).

The Eleventh Circuit's recent decision in *B-Smith Enterprises, LP v. Bank of America, N.A.* is illustrative and directly on point. In that case, the plaintiff had deposited funds in a trust account that its former lawyer maintained at Bank of America, and the plaintiff sued the bank after the lawyer misappropriated those funds. 2023 WL 2034419, at *1 (11th Cir. Feb. 16, 2023). The district court dismissed the plaintiff's negligence claim, and the court of appeals affirmed. *Id.* The court explained that "Plaintiff's conclusory allegations that the complained-of transfers were 'nonroutine' and inconsistent with supposed 'generally accepted banking practices' … fail to support a reasonable inference that [Bank of America] had actual knowledge of wrongdoing." *Id.* at *2. "Like the allegations involved in *Lamm*, Plaintiff's allegations assert 'at most' only that [Bank of America] 'should have known' about [the lawyer's] misappropriation of funds and breach of fiduciary duty." *Id.* Because the plaintiff thus "failed to allege facts from which we can infer reasonably that [Bank of America] actually knew about [the lawyer's] misappropriation of funds," "Plaintiff cannot demonstrate that [Bank of America] owed Plaintiff (a noncustomer) a duty of care." *Id.* at *3.

Here too, Plaintiffs' allegations suggest, at most, only that AMB should have known about the Center's alleged misappropriation based on various purported "red flags." Dkt. 1 at 45-46 (¶¶ 238-39). Indeed, Plaintiffs admit as much in the complaint, asserting at one point that "American Momentum Bank knew *or should have known*, by virtue of the numerous red flags," about the alleged misappropriation. *Id.* at 46 (¶ 241)

(emphasis added); *see also id.* at 3 (¶ 4) (describing AMB as "apparently asleep at the switch despite numerous red flags").

Florida district courts regularly dismiss negligence claims against banks where, as here, the plaintiff has not plausibly alleged that the bank had actual knowledge that the plaintiff's funds were being misappropriated. *See, e.g.*, *Rusty115 Corp. v. Bank of Am., N.A.*, 2023 WL 6064518, at *11-12 (S.D. Fla. Sept. 18, 2023); *London Town Pic Ltd. v. Wells Fargo Bank, N.A.*, 2021 WL 8894456, at *4-5 (S.D. Fla. Jan. 28, 2021); *Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316, 1324 (M.D. Fla. 2015), *aff'd sub nom. Wiand v. Wells Fargo Bank, N.A., Inc.*, 677 Fed. Appx. 573 (11th Cir. 2017). This Court should do the same.

**B.    Additionally, AMB did not have a duty to investigate transactions made by parties with authority to access the SNT accounts at issue.**

For the reasons explained above, under Florida law AMB did not owe any duty to Plaintiffs. But even if AMB owed Plaintiffs some duty, it certainly did not owe them a duty to investigate transactions made by parties with authority to access the accounts at issue.

As the Eleventh Circuit recently explained, "both the Florida Supreme Court and this Court have held that depository institutions generally have no duty to investigate transactions made by authorized agents of the account holder." *Insight Sec., Inc. v. Deutsche Bank Tr. Co. Americas*, 2022 WL 2313980, at *4 (11th Cir. June 28, 2022) (cleaned up). Rather, "a bank … has the right to assume that individuals who have the legal authority to handle [an] entity's accounts do not misuse the entity's funds."

*O'Halloran v. First Union Nat. Bank of Florida*, 350 F.3d 1197, 1205 (11th Cir. 2003). Indeed, "a refusal on the part of the bank to permit a withdrawal by a duly authorized representative of a corporate accountholder would no doubt breach the bank's deposit agreement with that accountholder." *Id.*; *see also Freeman v. Dean Witter Reynolds, Inc.*, 865 So. 2d 543, 549 (Fla. 2d DCA 2003) ("When one establishes a bank account, the bank is obligated to deposit legal transfers into the account and to honor checks and other usual debits against the account. We would radically alter the law of banking if we required banks to review credit card accounts and checking accounts to make certain that their customers were spending their money wisely.").

Here, Plaintiffs' negligence claim is based on AMB's alleged failure both "to inquire further into the use and status of SNT assets" and "to take reasonable steps to prevent the further dissipation of SNT assets." Dkt. 1 at 46-47 (¶¶ 242-43). However, Plaintiffs do not allege that SNT assets were transferred from AMB by someone who lacked authority over the Center's accounts. *See id.* at 12-13 (¶¶ 64, 66) (alleging that the misappropriated funds were transferred from AMB by "the Center"). Accordingly, AMB had no duty to investigate the transactions that Plaintiffs are complaining of or to prevent the transfers from occurring. For this reason too, Plaintiffs' negligence claim should be dismissed. *See O'Halloran*, 350 F.3d at 1206 ("If indeed Payne had complete and legal authorization from Greater Ministries, as alleged by the complaint, First Union is not responsible for Payne's diverting the funds to his own purposes. Such allegations foreclose the possibility that First Union was responsible to Greater Ministries for Payne's withdrawals, and dismissal of this claim was appropriate.").

**C.    Plaintiffs' attempt to use federal banking regulations to manufacture a duty fails.**

Plaintiffs also suggest as part of their negligence claim that "American Momentum Bank owed Plaintiffs and Class Members a fiduciary duty to 'know its customer' and conduct reasonable due diligence with regard to the opening and use of accounts in its custody." Dkt. 1 at 45 (¶ 237). Although Plaintiffs do not elaborate on the source of this alleged duty, they appear to be referring to the federal Bank Secrecy Act, as amended by the Patriot Act, which "requires banks to implement 'KYC/CIP' (Know Your Customer and Customer Identification Program) policies and procedures to prevent fraudulent and otherwise criminal activity." *Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*, 2019 WL 3503109, at *6 (N.D. Cal. Aug. 1, 2019).

However, it is well established that the Bank Secrecy Act "does not create a private cause of action permitting third parties to sue for violations of the statute." *Pupke v. McCabe*, 2014 WL 12955762, at *6 (S.D. Fla. Jan. 30, 2014) (cleaned up); *see also AmSouth Bank v. Dale*, 386 F.3d 763, 777 (6th Cir. 2004) ("[T]he Bank Secrecy Act does not create a private right of action."); *Venture Gen. Agency*, 2019 WL 3503109, at *7 ("[C]ourts are unanimous in holding that there is no private right of action under the BSA or Patriot Act." (collecting cases)). Rather, "[t]o the extent federal banking statutes such as the Bank Secrecy Act impose duties on banks, those duties extend to the United States, not a bank's customers." *Wiand*, 86 F. Supp. 3d at 1322. Accordingly, Plaintiffs argument that AMB owed them a duty to "know its customer" fails.

\*       \*       \*

In sum, because Plaintiffs were not customers of AMB and AMB had no knowledge of the alleged misappropriation of their funds, AMB did not owe a duty of care to Plaintiffs. Moreover, even if AMB owed some duty to Plaintiffs (which it did not), it certainly had no duty to investigate transactions executed by authorized persons. Finally, AMB did not owe Plaintiffs a duty to "know its customer." For all these reasons, Plaintiffs' negligence claim against AMB should be dismissed.

## II.   The Court should dismiss Plaintiffs' breach of fiduciary duty claim against AMB.

In addition to their negligence claim, Plaintiffs also assert a breach of fiduciary duty claim against AMB. Dkt. 1 at 33-36. "The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). This claim should be dismissed because Plaintiffs do not plausibly allege that AMB owed them a fiduciary duty.

Plaintiffs allege that "Plaintiffs and Class Members entrusted the custody of SNT accounts to American Momentum Bank as Plaintiffs' and Class Members' fiduciary." Dkt. 1 at 33 (¶ 161). Plaintiffs further claim that "American Momentum Bank knew that the pooled SNT accounts maintained at its location were SNTs and that it owed the attendant heightened fiduciary duties of care, loyalty, prudence, and good faith to the SNTs and Plaintiffs." *Id.* at 34 (¶ 163). According to Plaintiffs, "[b]y virtue of the imbalance of superiority and vulnerability in American Momentum

10

Bank's relationship with Plaintiffs, American Momentum Bank and Plaintiffs and Class Members had a special relationship giving rise to American Momentum Bank's heightened, fiduciary duties of care owed to Plaintiffs." *Id.* (¶ 164).

However, Plaintiffs do not plausibly allege that AMB in fact owed them a fiduciary duty. "A fiduciary relationship may be either express or implied." *Maxwell v. First United Bank*, 782 So. 2d 931, 933. (Fla. 4ᵗʰ DCA 2001). "Express fiduciary relationships are created by contract, such as principal/agent, or can be created by legal proceedings in the case of a guardian/ward. A fiduciary relationship which is implied in law is based on the circumstances surrounding the transaction and the relationship of the parties, and may be found when 'confidence is reposed by one party and a trust accepted by the other.'" *Id.* at 933-34 (citation omitted).

No express fiduciary relationship is plausibly alleged to have existed between Plaintiffs and AMB. After all, as discussed above, Plaintiffs were not customers of AMB, and absent unusual circumstances not present here, banks do not owe even a general duty of care to non-customers. *See Chang*, 845 F.3d at 1094-95. Moreover, a bank does not owe a fiduciary duty even to its *actual* customers. *See Arbitrajes Financieros, S.A. v. Bank of Am., N.A.*, 605 Fed. Appx. 820, 823 (11th Cir. 2015) ("Under Florida law, a bank does not have a fiduciary relationship with its standard deposit account customers, but instead owes only a duty of ordinary care in arms-length transactions."). Accordingly, federal district courts in Florida agree that "banks do not owe a fiduciary duty to non-customers with whom they share no relationship." *Acciard v. Whitney*, 2010 WL 6813952, at *8 (M.D. Fla. Sept. 17, 2010); *see also, e.g., Rusty115*

*Corp.*, 2023 WL 6064518, at *6 (same); *Pupke*, 2014 WL 12955762, at *6-7 (same); *2002 Irrevocable Tr. For Hvizdak v. Shenzhen Dev. Bank, Co., Ltd.*, 2010 WL 11512368, at *5 (M.D. Fla. Mar. 26, 2010), *aff'd sub nom. 2002 Irrevocable Tr. For Hvizdak v. Huntington Nat. Bank*, 428 Fed. Appx. 924 (11th Cir. 2011) (same); *O'Halloran v. First Union Nat. Bank of FL.*, 205 F. Supp. 2d 1296, 1301-02 (M.D. Fla. 2002), *vacated on other grounds*, 350 F.3d 1197 (11th Cir. 2003) (same); *In re Meridian Asset Mgmt., Inc.*, 296 B.R. 243, 261-62 (Bankr. N.D. Fla. 2003) (same).

Plaintiffs also do not plausibly allege that an implied fiduciary relationship existed between themselves and AMB. While Plaintiffs may claim to have "reposed trust in American Momentum Bank to exercise its superior expertise in serving as custodian of SNT accounts," Dkt. 1 at 33 (¶ 162), Plaintiffs' allegation regarding their supposed "reposed trust in American Momentum Bank" is the sort of "formulaic recitation" wholly lacking in "further factual enhancement" that *Twombly* and *Iqbal* deem insufficient. Moreover, Plaintiffs allege no facts showing that AMB *accepted* this supposed trust. Accordingly, as a matter of law, no fiduciary relationship existed between Plaintiffs and AMB. *See Arbitrajes Financieros*, 605 Fed. Appx. at 824 (rejecting bank customers' argument that a fiduciary relationship existed between themselves and the bank because although "appellants allege that they placed their trust in [the bank], they point to no facts that show [the bank], in turn, accepted appellants' confidence and trust"); *Lamm*, 749 F.3d at 951 (rejecting a breach of fiduciary duty claim by a bank customer because "although Mr. Lamm may have unilaterally relied on [the bank] for protection from [his investment advisor's] misconduct, the custody

agreement and the facts alleged in the complaint establish an arm's length bargain imposing limited obligations on the parties, not a relationship of 'trust and confidence' or 'special circumstances' as required to make out a fiduciary duty claim").

The recent *Rusty115 Corp. v. Bank of America, N.A.* decision confirms this analysis. In that case, the plaintiffs had loaned millions of dollars to an entity called "Wright Bros.," who in turn deposited the money into an account it held at Bank of America before misappropriating the funds as part of a Ponzi scheme. 2023 WL 6064518, at *1. After the victims of the Ponzi scheme sued Bank of America for constructive fraud (which requires a fiduciary relationship), the court explained that "[u]nder Florida law, banks ordinarily do not owe a fiduciary duty to their own customers, and so it follows that a bank would also not owe a fiduciary duty to a third-party who chooses to deposit money into a customer's account." *Id.* at *6. The Court further reasoned that "[w]hile the Complaint alleges a plausible fiduciary relationship between Plaintiffs and Wright Bros., it does not adequately allege how that relationship extends to [Bank of America] so as to impose upon it a fiduciary duty owed to Plaintiffs." *Id.* After all, "a fiduciary relationship requires the acceptance of trust by the fiduciary and here, there are no facts alleged to show that [Bank of America] accepted that responsibility." *Id.* Accordingly, the court rejected the plaintiffs' constructive fraud claim. *Id.*

Here too, there is no plausible allegation of a fiduciary relationship between AMB and Plaintiffs because Plaintiffs were not customers of AMB and AMB never

accepted any trust that Plaintiffs might have reposed in AMB.[3] This Court should reject Plaintiffs' breach of fiduciary duty claim for the exact same reasons as the court in *Rusty115 Corp.*

### III.    The Court should dismiss Plaintiffs' aiding and abetting breach of fiduciary duty claim against AMB.

Finally, Plaintiffs raise an aiding and abetting breach of fiduciary duty claim against AMB. Dkt. 1 at 39-43. "A cause of action for aiding and abetting the breach of a fiduciary duty requires a plaintiff to establish: 1) a fiduciary duty on the part of a primary wrongdoer; 2) a breach of that fiduciary duty; 3) knowledge of the breach by the alleged aider and abettor; and 4) the aider and abettor's substantial assistance or encouragement of the wrongdoing." *Fonseca v. Taverna Imports, Inc.*, 212 So. 3d 431, 442 (Fla. 3d DCA 2017); *see also B-Smith Enterprises*, 2023 WL 2034419, at *2 (same). Plaintiffs' aiding and abetting claim should be dismissed because Plaintiffs do not plausibly allege that AMB had actual knowledge of any breach of a fiduciary duty owed to Plaintiffs.

According to Plaintiffs, the Center owed a fiduciary duty to Plaintiffs and "multiple red flags put American Momentum Bank on notice that the Center was in

---

[3] Although Plaintiffs make a conclusory allegation that AMB "knew … that it owed the attendant heightened fiduciary duties of care, loyalty, prudence, and good faith to the SNTs and Plaintiffs," Dkt. 1 at 34 (¶ 163), this allegation is premised on Plaintiffs' faulty legal conclusion that AMB in fact owed Plaintiffs a fiduciary duty. Accordingly, the Court should disregard this allegation. *See Newbauer*, 26 F.4th at 934 ("When evaluating a motion to dismiss, the first step is to "eliminate any allegations in the complaint that are merely legal conclusions."). Plaintiffs also briefly allege that AMB owed them "a fiduciary duty to 'know its customer.'" Dkt. 1 at 34 (¶ 166). The Court should disregard this allegation as well because, as explained above, it appears to be nothing more than an attempt to manufacture a duty based on the federal Bank Secrecy Act, which does not create a private cause of action. *See* Part I.C, *supra*.

breach of its fiduciary duties of care, loyalty, prudence, and good faith to the SNTs and Plaintiffs." Dkt. 1 at 40 (¶ 209). Plaintiffs insist that based on these "red flags, and likely numerous others that will be revealed in discovery, American Momentum Bank had actual knowledge that the funds in the SNT accounts were being commingled and mishandled and the Center was breaching its fiduciary duties to Plaintiffs." *Id.* at 41 (¶ 215).

However, as explained above in the negligence section, "[a]lleging that a bank disregarded 'red flags' such as 'atypical activities' on a customer's account is insufficient to establish knowledge." *Lamm*, 749 F.3d at 950; *see also Perlman*, 559 Fed. Appx. at 994 ("While these 'red flags' may have put the bank on notice that some impropriety may have been taking place, those alleged facts do not create a strong inference of actual knowledge." (cleaned up)); *Rusty115 Corp.*, 2023 WL 6064518, at *7 ("'Red flags' in banking transactions alone do not constitute the conscious awareness of wrongdoing necessary to maintain an aiding and abetting cause of action." (cleaned up)). Accordingly, Plaintiffs have not plausibly alleged that AMB had actual knowledge of the Center's alleged breach of fiduciary duty.

Again, the Eleventh Circuit's recent decision in *B-Smith Enterprises* is directly on point. As previously discussed, in that case the plaintiff had deposited funds in a trust account that its former lawyer maintained at Bank of America, and the plaintiff sued the bank after the lawyer misappropriated those funds. 2023 WL 2034419, at *1. The court of appeals held that the plaintiff's aiding and abetting breach of fiduciary duty claim failed "for about the same reason" as its negligence claim—"Plaintiff's

15

conclusory allegations that the complained-of transfers were 'nonroutine' and inconsistent with supposed 'generally accepted banking practices' … fail to support a reasonable inference that [Bank of America] had actual knowledge of wrongdoing." *Id.* at \*2-3. Rather, "Plaintiff's allegations assert 'at most' only that [the bank] 'should have known' about [the lawyer's] … breach of fiduciary duty." *Id.* at \*2 (quoting *Lamm*, 749 F.3d at 950). Accordingly, "the district court concluded properly that Plaintiff's claim for aiding and abetting a breach of fiduciary duty was subject to dismissal." *Id.* Here too, Plaintiffs allegations suggest, at most, only that AMB *should have known* about the Center's alleged breach of fiduciary duty based on various purported "red flags." Dkt. 1 at 40-41 (¶ 209); *see also id.* at 3 (¶ 4) (describing AMB as "asleep at the switch").[4]

The Eleventh Circuit frequently affirms the dismissal of aiding and abetting claims against banks when the plaintiff has not plausibly alleged that the bank had actual knowledge that the plaintiff's funds were being misappropriated. *See, e.g.*, *B-Smith Enterprises*, 2023 WL 2034419, at \*2; *Arbitrajes Financieros*, 605 Fed. Appx. at 824-25 ("Because appellants failed to sufficiently allege [the bank] had actual knowledge of Rosemont's breach, the district court properly dismissed their aiding and abetting claims."); *Lamm*, 749 F.3d at 950 ("Mr. Lamm's aiding and abetting claims

---

[4] In an apparent attempt to get around the rule that mere awareness of "red flags" does not constitute actual knowledge of a breach of fiduciary duty, Plaintiffs make the conclusory allegations that "[t]hese numerous red flags were not mere indications of the Center's breaches of its fiduciary duties to Plaintiffs and Class Members but rather, constitute breaches of fiduciary duty in and of themselves." Dkt. 1 at 41 (¶ 210). This allegation is nothing more than a legal conclusion that the Court should disregard. *See Newbauer*, 26 F.4th at 934 ("When evaluating a motion to dismiss, the first step is to "eliminate any allegations in the complaint that are merely legal conclusions.").

fail because his factual allegations are insufficient to establish (or allow one to fairly infer) State Street's knowledge of the underlying fraud or breach of fiduciary duty by Taurus."); *Perlman*, 559 Fed. Appx. at 994 ("While these 'red flags' may have put the bank on notice that some impropriety may have been taking place, those alleged facts do not create a strong inference of actual knowledge. The district court properly concluded that Perlman's amended complaint failed to state claims for relief for aiding and abetting." (cleaned up)); *Lawrence v. Bank of Am., N.A.*, 455 Fed. Appx. 904, 907 (11th Cir. 2012) ("To be liable, the bank would have had to have actual knowledge of Diamond's fraudulent activities. These allegations simply fail to make that 'plausible.'"). In accordance with these cases, the Court should dismiss Plaintiff's aiding and abetting breach of fiduciary duty claim against AMB.

## CONCLUSION

All Plaintiffs have plausibly alleged against American Momentum Bank is that it did exactly what it is supposed to do: deposit legal transfers into accounts and honor checks and other usual debits against accounts. Plaintiffs' claims against those who allegedly misappropriated funds will go forward. But Plaintiffs' claims against American Momentum Bank rest wholly on formulaic recitations of legal standards and misstatements of Florida law. Plaintiffs have failed to plead any claim against American Momentum Bank upon which relief can be granted, and their original Class Action Complaint should be dismissed as to American Momentum Bank.

Dated: March 14, 2024

Respectfully submitted,

**BECK REDDEN LLP**

By:  */s/ Marcos Rosales*
    Marcos Rosales
    TX Bar No. 24074979
    (Special Admission Pending)
    mrosales@beckredden.com
    1221 McKinney, Suite 4500
    Houston, TX  77010-2010
    Tel: (713) 951-3700

**LEAD       COUNSEL       FOR
DEFENDANT       AMERICAN
MOMENTUM BANK**

**COUNSEL   FOR   DEFENDANT
AMERICAN MOMENTUM BANK:**

BECK REDDEN LLP
Cassandra R. Maneen
TX Bar No. 24120989
(Special Admission Pending)
cmaneen@beckredden.com
Bennett J. Ostdiek
TX Bar No. 24122056
(Special Admission Pending)
bostdiek@beckredden.com
1221 McKinney Street, Suite 4500
Houston, TX 77010
Telephone:   (713) 951-3700
Facsimile:    (713) 951-3720

CARLTON FIELDS, PA
Donald R. Kirk
FL Bar No. 105767
dkirk@carltonfields.com
4221 W Boy Scout Boulevard, Suite 1000
Tampa, FL 33607
Telephone:   (813) 229-4334
Facsimile:    (813) 229-4133

Charles W. Throckmorton
FL Bar No. 101203
cthrockmorton@carltonfields.com
700 NW 1st Avenue, Suite 1200
Miami, FL 33136
Telephone:   (305) 530-0050
Facsimile:    (305) 530-0055

## CERTIFICATE OF CONFERENCE

I hereby certify that on March 13, 2024, I conferred with counsel for Plaintiffs via e-mail regarding the relief requested in this motion.  Plaintiffs are opposed to the relief requested herein.

*/s/ Marcos Rosales*
MARCOS ROSALES

## CERTIFICATE OF SERVICE

This is to certify that, pursuant to the provisions of Federal Rule of Civil Procedure 5, a true and correct copy of the foregoing document has been served on all counsel of record on March 14, 2024 via CM/ECF.

*/s/ Marcos Rosales*
MARCOS ROSALES