UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Case No. 8:24-cv-00438-SDM-AEP

CLARK CHAMBERLIN, a disabled minor child, by and through his parents and co-guardians TODD CHAMBERLIN and KELLI CHAMBERLIN, *on behalf of themselves and all others similarly situated*,

    Plaintiffs,

v.

BOSTON FINANCE GROUP, LLC, et al.

    Defendants.
_____

## UNIFORM CASE MANAGEMENT REPORT

    The goal of this case management report is to "secure the just, speedy, and inexpensive determination of" the action. *See* Fed. R. Civ. P. 1. Under Local Rule 3.02(a)(2), this case management report should be used in all civil cases except those described in Local Rule 3.02(d). Individual judges may have additional case management preferences that can be found under each judge's name on the Court's website, flmd.uscourts.gov/judges/all.

1. **Date and Attendees**

   > The parties may conduct the planning conference "in person, by telephone, or by comparable means[.]" *See* Local Rule 3.02(a)(1).

   The parties conducted the planning conference on 4/12/2024. Jonathan Streisfeld, Caroline Herter, and Thomas Leeder attended the conference for Plaintiffs. William A. McBride attended the conference for Defendants Boston Finance Group, LLC, Boston Holding Company, LLC, Boston Asset Management, Inc., Prospect Funding Holdings, LLC, Prospect Funding

Partners, LLC, Prospect Funding Holdings (NY) III, LLC, Fiduciary Tax & Accounting Services, LLC, Leo Govoni, and Jonathan Golden (collectively, the "BFG Defendants"). Charles Throckmorton and Cassie Maneen attended for Defendant American Momentum Bank. Daniel A. Nicholas attended for Defendant, John W. Staunton.

2. **Deadlines and Dates**

The parties request these deadlines and dates:

| Action or Event | Date |
| --- | --- |
| Deadline for providing mandatory initial disclosures. *See* Fed. R. Civ. P. 26(a)(1). | 5/31/2024 |
| Deadline for moving to join a party, *see* Fed. R. Civ. P. 14, 19, and 20, or amend the pleadings, *see* Fed. R. Civ. P. 15(a). | 9/30/2024 |
| Deadline for serving class certification expert disclosures under Rule 26(a)(2), including any report required by Rule 26(a)(2)(B).<br><br>Plaintiff<br>Defendant<br>Rebuttal | <br><br><br><br>12/10/2024<br>1/24/2025<br>2/24/2025 |
| Deadline for completing discovery and filing any motion to compel discovery. *See* Fed. R. Civ. P. 37; *Middle District Discovery* (2021). | 7/25/2025 |
| Deadline for moving for class certification, if applicable. *See* Fed. R. Civ. P. 23(c). | 3/10/2025 |
| Deadline for response(s) to motion for class certification | 4/11/2025 or if the motion is filed on or before February 7, |

| | |
|---|---|
| Plaintiffs' reply in support of motion for class certification* | 2025, then Defendants shall have 60 days to respond to the motion |
| | Plaintiff seeks 21 days following Defendants' response(s) |
| Deadline for filing any dispositive and *Daubert* motion. *See* Fed. R. Civ. P. 56. (Must be at least five months before requested trial date.) | 8/29/2025 |
| Deadline for participating in mediation. *See* Local Rules, ch. 4.<br><br>*Plaintiffs propose*: Peter J. Grilli, 3001 West Azeelle Street, Tampa, Florida, 33609, 813-874-1002<br><br>*Defendants propose*: Chris Griffin, 4006 S. MacDill Avenue, Tampa, FL 33611, 813-314-7449 | 7/25/2025 |
| Date of the final pretrial meeting. *See* Local Rule 3.06(a).<br><br>*The parties agree this date should be set following the ruling on class certification.* | TBD |
| Deadline for filing the joint final pretrial statement, any motion in limine, proposed jury instructions, and verdict form. *See* Local Rule 3.06(b). (Must be at least seven days before the final pretrial conference.)<br><br>*The parties agree this date should be set following the ruling on class certification.* | TBD |

---

* The Parties do not agree to this deadline, but Plaintiffs respectfully request permission to reply in support of class certification, noting class certification is an evidentiary matter akin to summary judgment. Under Local Rule 3.01d). the summary judgment movant has the right to file a reply.

3

| | |
|---|---|
| Date of the final pretrial conference. *See* Fed. R. Civ. P. 16(e); Local Rule 3.06(b).<br>*The parties agree this date should be set following the ruling on class certification.* | TBD |
| Month and year of the trial term.<br>*The parties agree this date should be set following the ruling on class certification.* | TBD |

The trial will last approximately 14 days and be

☒ jury.

☐ non-jury.

3. **Description of the Action**

   **Plaintiffs' description:**

   This tragic case involves a predatory scheme that began in 2009 and continued at least through 2020 to misappropriate over $100,000,000.00 of special needs trust ("SNT") assets belonging to the most vulnerable members of our society, Plaintiffs and putative Class Members.  As alleged in Plaintiffs' Amended Class Action Complaint, the SNT funds were misappropriated from SNT accounts at American Momentum Bank to Defendant Boston Finance Group, LLC ("BFG") and subsequently, its related entity Defendants Prospect Funding Holdings, LLC; Prospect Funding Partners, LLC; Prospect Funding Holdings (NY) III, LLC, all controlled by individual Defendants Leo Govoni and John Staunton (an attorney), The Center for Special Needs Trust Administration, Inc.'s founders and former directors, and Jonathan Golden (an attorney and their right-hand man).

   The individual Defendants along with Defendants Boston Asset Management, Inc. ("BAM"); Fiduciary Tax & Accounting Services, LLC ("FTAS"); Boston Holding Company, LLC; and American Momentum Bank caused and/or assisted in the diversion of Plaintiffs' and Class Members' SNT assets to BFG and the Prospect entities.  BAM and FTAS were service providers to the Center and acted as agents for the administration of the SNTs. Plaintiffs bring legal and equitable claims against Defendants for themselves and the putative Class

4

based on their role in the $100,000,000 misappropriation of SNT assets and the resulting injuries to Plaintiffs and Class Members.

This action involves multiple defendants and numerous complex legal and factual issues related to the diversion of funds from 1,570 beneficiaries' SNTs. Plaintiffs anticipate the primary issues involved will include the extent of each Defendant's duties owed to Plaintiffs and Class Members; each Defendant's knowledge of the $100,000,000 misappropriation of SNT assets; identifying and tracing the flow of SNT funds through Defendants' possession; and issues relevant to class certification.

The following causes of action are pled: Conversion (Count I), Breach of Fiduciary Duty (Counts II, III, and IV), Aiding and Abetting Breach of Fiduciary Duty (Counts V and VI), Negligence (Counts VII, VII, and IX), Violation of the Fraudulent Transfer Act (Count X), Unjust Enrichment (Counts XI and XII), and Declaratory Relief—Alter Ego (Count XIII).

**BFG Defendants' description:**

Despite Plaintiffs' allegations of a nefarious and complex scheme, this case is relatively straightforward. At its core, this is a case brought by various beneficiaries of a trust administered by The Center for Special Needs Trust Administration, Inc. (the "Debtor") who are attempting to recover funds that the Debtor loaned to Boston Finance Group, LLC ("BFG") (the "Loan"). The Loan, amended several times, was well documented and repeatedly approved by Debtor's board of directors. The Loan matured on January 1, 2017 and was declared to be in default by Debtor in September 2023. In February 2024, the Debtor filed bankruptcy, claiming that it does not have adequate funds to cover trust distributions.

The Debtor is a noticeably absent party in this lawsuit.

Via this action, Plaintiffs are seeking to do an end-run around the Loan and the Debtor's bankruptcy in an attempt to recover directly not only from BFG, but also its owners, affiliates, and an employee in-house counsel. Plaintiffs are inventing legal theories and duties as well as fiduciary relationships by attempting to insert themselves directly into what is, at its heart, a matter between the Debtor and BFG which will undoubtedly be a significant part of the Debtor's bankruptcy.

5

Contrary to Plaintiffs' inflammatory rhetoric, there was no "predatory scheme" here. This was a legitimate Loan that went into default, and the parties to this Loan, i.e., the Debtor and BFG, are the parties that need to resolve this issue. Plaintiffs attempt to insert themselves directly into this lending transaction by alleging a grand conspiracy and asserting baseless claims against parties not even remotely involved in the Loan transaction or even the Debtor's business. It is the BFG Defendants' position that because the heart of this case is the Loan that Debtor agreed to with BFG, the only proper venue for the recovery of the funds lent by the Debtor is Debtor's bankruptcy proceedings.

**Defendant American Momentum Bank's ("AMB") description:**

Plaintiffs allege that they are grantors and/or beneficiaries of certain "special needs trusts" ("SNTs"), of which the Center for Special Needs Trust Administration (the "Center") "serves as the trustee." In turn, the Center "maintains … SNT bank accounts" at AMB. AMB is a bank. Plaintiffs do not have any direct, or fiduciary, relationship with AMB.

Plaintiffs allege that certain individuals and entities associated with the Center, in a series of transactions dating back to 2009, misappropriated $100 million from SNT accounts that the Center maintained at AMB. Plaintiffs sued those parties, asserting claims such as conversion, breach of fiduciary duty, and unjust enrichment. Despite no relationship with AMB, Plaintiffs also sued AMB, asserting claims for negligence, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty.

Plaintiffs are not customers of AMB. Parties other than AMB served as the trustee, investment manager, and custodian of investment accounts for the SNTs, which the Center itself confirms. Each of these individuals was authorized to access an account.

Though multiple Defendants are involved, AMB is differently situated than any of the other eight defendants. Plaintiffs do not plausibly allege, nor could they prove, a viable cause of action against AMB. Accordingly, the allegations against AMB are not complex and resolution of AMB's pending Rule 12(b)(6) Motion to Dismiss will refine the issues in this dispute.

**Defendant, John W. Staunton's, description ("Staunton")**

Staunton dutifully represented the Center for Special Needs Trust

Administration, Inc. (the "Center"), consistent with the highest standards of good faith and business judgment until his resignation in December of 2009. Stanton is not part of any alleged conspiratorial scheme concocted, if not fictionized, by Plaintiffs in the Complaint, and never profited from this fantasy.

On the contrary, the entire gravamen of this case is based on claims brought by beneficiaries of a pooled SNT trust administered by the Center in a feigned and "end-around" effort to recover funds the Center, not the beneficiaries, loaned Boston Finance Group, LLC ("BFG") (the "Loan"). BFG is not, nor ever been the "alter ego" or "instrumentality" of Staunton, and certainly not owned, managed or controlled by Staunton. The overwhelming majority of the purported loan, which was continuously approved by the Center's directors, was funded many years "after" Staunton resigned from the Center and well before the creation of most, if not any, of the pooled SNT's trust at issue, the settlors of which, Staunton does not even know, and certainly has no fiduciary relationship. As for the litany of Defendant entities, who somehow received or benefited from the loan, Staunton, once again, has no connection, and certainly not "alter ego" or "instrumentality" with any modicum of ownership, management and control. Such allegations are pure fiction, sanctionable, and not based on fact.

Staunton, who never reaped any financial gain from the Loan, had no idea or slightest inking of status until the Center filed bankruptcy in February 2024, and for which, he is deeply saddened. Curiously, the Debtor is not part of this lawsuit, which involves at its core, the recovery of the Loan and proceeds therefrom owed the Debtor from the BFG. None of the beneficiaries have claim of right, title, or possession to the loan proceeds, and certainly not after creation of the underlying trust, which is irrevocable. This is solely a matter within the exclusive jurisdiction of the bankruptcy court and should only be pursued by the Debtor in connection with legal duties purportedly owed to Center as a matter of privity and relationship, which does not run to beneficiaries as a matter of law.

Staunton adamantly denies all allegations of the baseless Complaint and has numerous defenses thereto.

### 4. Disclosure Statement

☒ Each party as filed a disclosure statement using the required form.

5. **Related Action**

☒ The parties acknowledge their continuing duty under Local Rule 1.07(c) to notify the judge of a related action pending in the Middle District or elsewhere by filing a "Notice of a Related Action." No notice need be filed if there are no related actions as defined by the rule.

6. **Consent to a Magistrate Judge**

> "A United States magistrate judge in the Middle District can exercise the maximum authority and perform any duty permitted by the Constitution and other laws of the United States." Local Rule 1.02(a). With the parties' consent, a district judge can refer any civil matter to a magistrate judge for any or all proceedings, including a non-jury or jury trial. 28 U.S.C. § 636(c).
>
> The Court asks the parties and counsel to consider the benefits to the parties and the Court of consenting to proceed before a magistrate judge. Consent can provide the parties certainty and flexibility in scheduling. Consent is voluntary, and a party for any reason can decide not to consent and continue before the district judge without adverse consequences. *See* Fed. R. Civ. P. 73(b)(2).

☐ The parties do consent and file with this case management report a completed Form AO 85 "Notice, Consent, and Reference of a Civil Action to a Magistrate Judge," which is available on the Court's website under "Forms."

☒ The parties do not consent.

7. **Preliminary Pretrial Conference**

☐ The parties do not request a preliminary pretrial conference before the Court enters a scheduling order.

☒ Defendants do request a preliminary pretrial conference, and Defendants want to discuss scheduling issues associated with the potential stay of this matter due to The Center for Special Needs Trust Administration, Inc.'s bankruptcy. The non-bank Defendants filed a Motion to Stay, claiming this action should be stayed because of the bankruptcy, which Plaintiffs have opposed. *See* ECF Nos. 29, 37.

8. **Discovery Practice**

   > The parties should read the Middle District Discovery Handbook, available on the Court's website at flmd.uscourts.gov/civil-discovery-handbook, to understand discovery practice in this District.

   ☒ The parties confirm they will comply with their duty to confer with the opposing party in a good faith effort to resolve any discovery dispute before filing a motion. *See* Local Rule 3.01(g); *Middle District Discovery* (2021) at § I.A.2.

9. **Discovery Plan**

   The parties submit the following discovery plan under Rule 26(f)(2):

   A. The parties agree to the timing, form, or requirement for disclosures under Rule 26(a):

      ☒ Yes.
      ☐ No; instead, the parties agree to these changes: enter changes.

   B. Discovery may be needed on these subjects:

   Plaintiffs anticipate discovery will be needed on the following subjects:

   1. The flow and use of funds diverted from SNT accounts to BFG;
   2. The extent of American Momentum Bank's knowledge of the misappropriation of funds from SNT accounts to BFG;
   3. The identity of subsequent transferees of the funds misappropriated from SNT accounts;
   4. The entity Defendants' corporate structure and the identity and corporate structure of other entities affiliated with them or under common control;
   5. Additional individuals or entities that may be liable for the harm caused to Plaintiffs and Class Members in connection with the misappropriation of their SNT assets;
   6. Each Defendant's relationship and involvement with the other Defendants;
   7. Each Defendant's relationship and involvement with the Center for Special Needs Trust Administration, Inc.;

8. The identity of all SNT beneficiaries whose SNT assets were misappropriated to BFG, and the amount depleted from each beneficiary's SNT due to the misappropriation;
9. The fees and costs charged to administer the SNTs;
10. The purpose, business, ownership, and assets of Defendants BFG, Boston Holding Company, Boston Asset Management, Fiduciary Tax & Accounting Services, Prospect Funding, Prospect Funding Holdings, Prospect Funding Partners, and Prospect Funding Holdings (NY), and whether these Defendants are the individual Defendants' alter egos;
11. Defendants' assets that may be available for execution of any judgment for Plaintiffs and Class Members;
12. Accountings and tax reporting documents prepared with respect to Plaintiffs' and Class Members' SNTs during the relevant period;
13. What the compromised SNTs' current value would be if SNT assets were invested instead of misappropriated to BFG; and
14. Expert opinions related to forensic accounting, investment management, trust administration, and banking industry standards.

BFG Defendants anticipate discovery will be needed on the following subjects:

1. Debtor's agreement to the Loans made by Debtor to BFG;
2. The source of the funds for the Loans made by Debtor to BFG;
3. The amount of the Loans made by Debtor to BFG;
4. The timing of the Loans made by Debtor to BFG;
5. The amount of money repaid to Debtor by BFG related to the Loans;
6. Debtor's decision to declare the Loans in default;
7. Debtor's relationships and agreements with Defendants;
8. Debtor's payments to Defendants;
9. Debtor's communications with the proposed Plaintiff Class;
10. The relationship between the proposed Plaintiff Class and Defendants;
11. Communications between Defendants and the proposed Plaintiff Class;
12. The agreements between the Debtor and the members of the proposed Plaintiff Class;
13. The numerosity, commonality and typicality of the proposed Plaintiff Class; and
14. The adequacy of the proposed class representatives and counsel to

10

represent the proposed Plaintiff Class.

American Momentum Bank believes that the claims against it should be dismissed pursuant to Rule 12(b)(6), but in the event that this case proceeds against the bank, it anticipates that discovery will be needed on the following subjects:

1. The extent of American Momentum Bank's knowledge of action taken by any defendant affecting funds from SNT accounts to BFG;
2. Each Plaintiff's relationship, if any, with American Momentum Bank;
3. The operations of American Momentum Bank for transactions from the Center for Special Needs Trust Administration, Inc. (the "Center");
4. The identity, role, and authority of the trustee for the Center;
5. The identity, role, and authority of the investment account custodian for the Center;
6. The identity, role, and authority of the investment managers for the Center;
7. Each Plaintiff's relationship and involvement with the other Plaintiffs;
8. Each Plaintiff's relationship and involvement with the other Defendants;
9. Each Plaintiff's relationship and involvement with the Center;
10. The facts and circumstances surrounding the Center's request to maintain a depository relationship with American Momentum Bank after filing for bankruptcy;
11. Accountings and tax reporting documents prepared with respect to Plaintiffs' and Class Members' SNTs during the relevant period; and
12. Expert opinions related to forensic accounting, investment management, banking regulations, and industry standards.

Defendant Staunton anticipates discovery will be needed in the following subjects:

1. All subject matters identified by Plaintiff(s) and all Defendants;
2. All allegations of the Complaint and all Amendments thereto;
3. All affirmative defenses alleged by Staunton and all other Defendants;
4. The date, nature, and creation of each and every trust that is at issue.
5. Relationships, duties, contracts, between Staunton, Plaintiffs Beneficiaries, Center, and all other Defendants;

11

6. Staunton's alleged "alter ego" and "instrumentality" relationships with all other Defendants;
7. Nature, location, dates, amounts, owner, recipients, title, ownership, of any converted funds;
8. All fiduciary duties allegedly owed by Staunton to Plaintiff and the Center and any alleged aiding and abetting thereof;
9. All monies allegedly earned by and/or paid Staunton from the Loan;
10. The Loan to BGF, source of loan proceeds, and Staunton purported involvement;
11. Staunton's resignation from the Center;
12. Formation, purposes, and operation of the Center prior to resignation;
13. Plaintiffs' standing to bring subject action and bankruptcy jurisdiction; and
14. Expert opinions related to pleadings, forensic accounting, investment management, banking regulations, fiduciary duty, and industry standards.

C. Discovery should be conducted in phases:

☒ No.
☐ Yes; describe the suggested phases.

D. Are there issues about disclosure, discovery, or preservation of electronically stored information?

☒ No.
☐ Yes.

The parties will submit a protocol for discovery of electronically stored information.

E. ☒ The parties have considered privilege and work-product issues, including whether to ask the Court to include any agreement in an order under Federal Rule of Evidence 502(d).

The parties will request entry of an order under Federal Rule of Evidence 502(d).

F. The parties stipulate to changes to the limitations on discovery imposed

under the Federal Rules of Civil Procedure and Local Rule 3.04 or other limitations:

☒ No.
☐ Yes.

**10. Request for Special Handling**

☒ The parties do not request special handling.

☐ The parties request special handling. Specifically, describe requested special handling.

☐ Enter party's name unilaterally requests special handling. Specifically, describe requested special handling.

**11. Certification of familiarity with the Local Rules**

☒ The parties certify that they have read and are familiar with the Court's Local Rules.

**12. Signatures**

Dated: April 23, 2024                             Respectfully submitted,

*s/ Jonathan M. Streisfeld*                       */s/ Marcos Rosales*
Jeff Ostrow FBN 121452                            Marcos Rosales
David L. Ferguson FBN 981737                      TX Bar No. 24074979
Jonathan M. Streisfeld FBN 117447                 (Special Admission)
Caroline Herter FBN 1035444                       mrosales@beckredden.com
**KOPELOWITZ OSTROW**                             Cassandra R. Maneen
**FERGUSON WEISELBERG**                           TX Bar No. 24120989
**GILBERT**                                       (Special Admission)
One West Las Olas Blvd., Suite 500                cmaneen@beckredden.com
Fort Lauderdale, Florida 33301                    Bennett J. Ostdiek
Telephone: 954-525-4100                           TX Bar No. 24122056
ostrow@kolawyers.com                              (Special Admission)
ferguson@kolawyers.com                            bostdiek@beckredden.com
streisfeld@kolawyers.com                          **BECK REDDEN LLP**
herter@kolawyers.com                              1221 McKinney Street, Suite 4500
                                                  Houston, TX 77010

13

Thomas H. Leeder FBN: 746401
Andrew R. Smith FBN: 107083
**LEEDER LAW**
8551 West Sunrise Blvd. | Ste. 202
Plantation, FL 33322
Telephone: (954) 734-2382
pleadings@leederlaw.com
4/23/2024

*Counsel for Plaintiffs and the Putative Class*

*/s/ William A. McBride*
Eric S. Koenig, FBN 0016693
ekoenig@trenam.com
ranctil@trenam.com
William A. McBride, FBN 112081
bmcbride@trenam.com
lbehr@trenam.com
**TRENAM, KEMKER, SCHARF, BARKIN, FRYE, O'NEILL & MULLIS, P.A.**
101 East Kennedy Boulevard
Tampa, FL 33601-1102
Telephone: (813) 223-7474

*Counsel for Boston Finance Group, LLC, Boston Holding Company, LLC, Boston Asset Management, Inc., Prospect Funding Holdings, LLC, Prospect Funding Partners, LLC, Prospect Funding Holdings (NY) III, LLC, Fiduciary Tax & Accounting Services, LLC, Leo Govoni, and Jonathan Golden*

Telephone: (713) 951-3700
Facsimile: (713) 951-3720

Donald R. Kirk, FBN 105767
dkirk@carltonfields.com
**CARLTON FIELDS, PA**
4221 W Boy Scout Blvd., Suite 1000
Tampa, FL 33607
Telephone: (813) 229-4334
Facsimile: (813) 229-4133

Charles W. Throckmorton, FBN 101203
cthrockmorton@carltonfields.com
**CARLTON FIELDS, PA**
700 NW 1st Avenue, Suite 1200
Miami, FL 33136
Telephone: (305) 530-0050
Facsimile: (305) 530-0055

*Counsel for American Momentum Bank*

*s/ Daniel A. Nicholas*
Daniel A. Nicholas
**COLE, SCOTT & KISSANE, P.A.**
500 N. Westshore Blvd., Suite 700
Tampa, Florida 33609
Telephone (813) 509-2691
Facsimile (813) 286-2900
daniel.nicholas@csklegal.com

*Counsel for John M. Staunton*